32196. LeCROY *v.* THE STATE.

DECIDED NOVEMBER 6, 1948.

*Thomas C. Burton, George L. Goode,* for plaintiff in error.

*John E. Frankum, Solicitor-General, Jeff C. Wayne,* contra.

GARDNER, J. ■ Under the Code section upon which this indictment is based provision is made for two cases, one where a child has a parent or guardian, and the other where the child has neither. In the latter case the child must be forcibly, maliciously or fraudulently led, taken or carried or enticed away against its own will and without its consent; in the former if these things shall be done against the will and without the consent of the parent or guardian, irrespective of that of the child, this alone will complete the offense. See *Gravett* v. *State,* 74 *Ga.* 191; *Bryant* v. *State,* 21 *Ga. App.* 668 (94 S. E. 856). The present case falls in a class of the first cases because the child had a parent. The crime as alleged and as made out by the evidence is against the right of the parent. On this point counsel for the defendant cite the case of *Hendon* v. *State,* 10 *Ga. App.* 78, 82 (72 S. E. 522). A careful reading of the *Hendon* case will disclose that it is not in conflict with the Supreme Court decision in the *Gravett* case, nor with the *Bryant* case, supra. In the instant case the State was able to make out the charge of the invasion of the parental right over the child without any reference to the testimony of the child or any other evidence produced by the defendant. Indeed, there is practically no unimpeached testimony of the defendant which would demand the jury to find that the father in any wise gave his consent for the child to leave with the defendant. So far as the general grounds are concerned, the evidence sustains the verdict.

854

■ Special ground 1 assigns error as follows: "Because the court erred in admitting, over the objection of movant, the following testimony of the witness Jim Defoor: 'I never saw the defendant but the one time, that night he came to my house, is the only time I saw him. After I moved to Habersham County, the defendant, Garvin LeCroy, came to my house on a Saturday night; he came there in a car four times. It was about the first Saturday night or Sunday of April, 1947. My daughter, Sarah Jewell Defoor was at my home at that time. This fellow drove up in my yard, and me and my boy went out; it was between eight and nine o'clock, and we went out there and asked him who he was, and he said it was Loyd Lawson, married your daughter, and it was not him; it was another fellow; George Franklin was the one that brought him there, and he is a married man, he told me. The way he commenced, I asked him who he was, and he said it was Loyd Lawson, married your daughter, and I said, get out and come in, just that way, and I said, who is that fellow you have with you? and he wouldn't tell me; he said, this is Garvin LeCroy, still I didn't believe that was that fellow that married my girl. It was not him. I said, you all leave without any trouble. They wanted to know if Sarah Jewell was there, and I told them that she was, and they wanted her to go with them and she told them she was not going with them, and I told them to leave without any trouble. I didn't want any trouble. Garvin LeCroy begged me to come over on the side of the car where he was, and I wouldn't do it. I just said, you all leave, and went back in the house, and they seed I was not coming, and both of them jumped out of the car. Garvin LeCroy tried to get Sarah Jewell to leave with him, and she refused; she told him she was going to stay with me all the time. I do not know if Garvin LeCroy had her out any other times between January 17, 1946, and the time she was taken away, and the time I moved to Habersham County, without my consent; I didn't see them any more after I left down here on Christmas Eve day; I didn't see him any more until that night.' Movant then and there objected to the admission of said testimony on the ground that it was evidence of a separate, distinct and independent crime, namely, an assault and battery or an assault with intent to murder more than one year after the alleged kid-

napping occurred; and that it was prejudicial and injurious to the defendant and did not illustrate any issue that was before the jury on the charge made in the indictment. The witness says he moved into Habersham County last 'Christmas Eve' which was Christmas Eve, 1946, and he says this occurrence took place at his home in April, 1947, some fifteen months after the alleged kidnapping. Movant insists that it was grave and harmful error to admit this testimony and was highly prejudicial to movant's case."

We have set out this ground in full for the reason that we can not see how it could have been prejudicial to the defendant. It was alleged to have been over a year after the occurrence upon which the defendant was tried before the indictment was drawn. While this was alleged to be an assault and battery or an assault with intent to murder on the part of the defendant, we do not think the evidence objected to is sufficient to make out such a crime. Moreover, the evidence for the defendant refers to the same transaction without any objection. When the child was on the stand testifying on behalf of the defendant, she testified that she married Loyd Lawson, an uncle of the defendant, and that she last saw her husband when he came to her father's house in Habersham County. The defendant was with him. They went to her father's house. Her husband went for her, but her father wouldn't let her go. "I wouldn't get with my husband because my father held me." The father held her when the defendant and her husband came up there to carry her away. She testified that that was the last time she saw her husband. She further testified that since her father moved to Habersham County she had not seen the defendant except on the occasion in question when he went to her father's house with her husband. Under all the facts of this case we do not think that the errors assigned in this special ground require a reversal of the case.

■ Special ground 2 assigns error on the refusal of the court to give a written request as follows: "Request to charge: I charge you that even though the child alleged to have been kidnapped appears to be under the age of 18 years, yet if it appears that she has reached the age of discretion, then you would have a right to consider whether or not she consented to accompany the defendant, and if she did so under these circumstances, the

defendant could not be guilty of the offense of kidnapping." When we view the charge of the court as a whole, under the evidence in this case, and particularly the following excerpt from the charge, we do not think the case should be reversed for any alleged errors assigned in this ground, when we read the request to charge in comparison with what the court did charge on this subject. The court charged: "Now, I charge you, gentlemen of the jury, that the consent of the child herself is immaterial, if you find that that child has not reached the age of discretion, and if you further find that she was carried away, enticed, decoyed away, without the consent of the parent, it would be immaterial whether she consented to be so carried away." It is true that the wording is somewhat different, but the effect is the same. We find no reversible error in this ground.

The court did not err in overruling the motion for a new trial for any of the reasons assigned.

*Judgment affirmed. MacIntyre, P. J., and Townsend, J., concur.*