## A04A1441. LEON-VELAZQUEZ v. THE STATE.
### (605 SE2d 400)

PHIPPS, Judge.

In a bench trial based on stipulated facts, Taurino Leon-Velazquez was found guilty of possession of cocaine and possession of a firearm in the commission of a crime. On appeal, Leon-Velazquez contends that the evidence against him was illegally obtained as a result of a warrantless entry into his home. We agree and reverse.

In reviewing a ruling on a motion to suppress, we construe the evidence most favorably toward upholding the trial court's findings and judgment.[1] We apply a de novo standard of review to the trial court's application of the law to undisputed facts.[2]

So considered, the evidence adduced at the suppression hearing established that at approximately 11:30 a.m., two deputies from the Hall County Sheriff's Department went to an apartment complex to serve an arrest warrant on a resident there. The warrant named and described a certain Hispanic male, Freddie Baca. Although the warrant stated the address as Building J, Apartments J-25 and J-21, deputies Jake Haney and Stuart Daley ascertained that no such apartment numbers existed. After unsuccessfully trying to serve the warrant at Apartment J-2, they went next door to Apartment J-1. Leon-Velazquez answered the door. When Haney asked whether Baca was present, Leon-Velazquez said that he no longer lived there. Haney thought that Leon-Velazquez "somewhat matched the description on the arrest warrant" but looked heavier. Haney then asked Leon-Velazquez for his name. In response, "[h]e kind of stumbled over his words. He appeared extremely nervous and he took a step back as he said his name." After Leon-Velazquez said his name while stepping backward, Haney then took a step forward into the doorway of the apartment, "[i]n case it was Mr. Baca so he couldn't slam the door on

[1] *Burse v. State*, 209 Ga. App. 276 (433 SE2d 386) (1993).

[2] *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

us and run." Doubting that Leon-Velazquez was who he said he was, Haney asked him "if we could come in and look for Mr. Baca."

Instead of responding to Haney's request for permission to search for Baca, Leon-Velazquez asked "to see the paper." While holding the warrant in his hand and examining it, Leon-Velazquez "again stepped further back into the room and we had no picture I.D. at this point and time so I again stepped with the subject." After taking the second step into the apartment and while waiting for Leon-Velazquez to finish reading the warrant, Haney stated that he had a clear view of a plastic baggie containing a white powdery substance consistent with the appearance and packaging of illegal narcotics. The suspected contraband, a small amount of cocaine, was on the armrest of a couch about eight feet from Haney. After observing the suspected drugs, Haney directed Daley to place Leon-Velazquez in custody. Daley discovered "a .45 caliber automatic handgun in the small of the defendant's back."

Leon-Velazquez was the only other witness who testified at the hearing. Leon-Velazquez testified that Haney kept "trying to get inside" and "was pushing himself in." He explained that he took a step back with the warrant in his hand, "[b]ecause [the officer] was trying to get inside." He testified that "[w]hat happened [was] when the other officer was handing me the warrant, he came inside. That's how I stepped back."

Without entering any written findings of fact, the trial court denied the motion to suppress. Leon-Velazquez appeals that ruling.

1. Leon-Velazquez contends that the denial of his motion to suppress was error because the discovery of the contraband occurred after the officer illegally entered his home. He claims that the fact that the officer had an arrest warrant for someone who did not reside at his home did not give the officer the right to enter.

When a defendant moves to suppress evidence based on an illegal search, the state must bear the burden of proving that the search was lawful.[3] After Leon-Velazquez contested the legality of the search and seizure, the state had to prove the lawfulness of the warrantless intrusion into Leon-Velazquez's home.[4]

Generally, a law enforcement officer's entry into a home without a search warrant and without consent or exigent circumstances constitutes an unjustified, forcible intrusion that violates the Fourth Amendment.[5] "[E]ven when armed with an arrest warrant, police must have either a search warrant, exigent circumstances or consent

---

[3] *State v. Kramer*, 260 Ga. App. 546 (580 SE2d 314) (2003) (physical precedent only).
[4] See *Phillips v. State*, 167 Ga. App. 260, 261 (1) (a) (305 SE2d 918) (1983).
[5] *Otwell v. State*, 201 Ga. App. 71, 73 (410 SE2d 178) (1991).

to lawfully enter a third person's home to arrest someone who does not reside there."[6] The record contains absolutely no evidence that Leon-Velazquez consented to the officer's entry into his home. Since the officer had neither consent nor a search warrant, he was required to have exigent circumstances.[7]

"[A]n exigent circumstance which does justify the warrantless entry of a private home is the officer's reasonable belief that such action is a necessary response on his part to an emergency situation."[8] Without more, even probable cause to believe that a crime has been committed or is being committed "does not authorize a warrantless search of [one's] dwelling."[9] Fear for the safety of a young child believed to be in harm's way is an example of an exigent circumstance.[10] Similarly, the Fourth Amendment does not bar police from making a warrantless entry when the officer reasonably believes that a person within the dwelling needs immediate aid.[11]

Here, the state failed to present any evidence that the officer's entry into the dwelling derived from an emergency situation or exigent circumstances.[12] At most, the evidence shows that Haney thought Leon-Velazquez looked nervous, seemed intoxicated, and might not have been truthful about his identity. When Leon-Velazquez asked to see the warrant and took a step backward into his apartment, Haney was not entitled to step forward into the private residence.[13] While the officers had a right to remain outside to await the return of the document and to see whether Leon-Velazquez would permit them to search the apartment for Baca, no emergency was in progress. Haney testified that Leon-Velazquez had not been asked for any identification, which Haney conceded would have shown that Leon-Velazquez was who he said he was. Haney also admitted that he did not have an arrest warrant for anyone who lived at that address. Absent exigent circumstances, and here there were not any, the officer had no right to step forward and intrude into the privacy of Leon-Velazquez's home.[14]

Nor does the plain view doctrine apply. "[T]he plain view doctrine authorizes seizure of illegal or evidentiary items visible to a police officer only if the officer's *access* to the object itself has some prior

---

[6] (Citations omitted.) *Brown v. State*, 240 Ga. App. 321, 322 (1) (523 SE2d 333) (1999).

[7] See *Otwell*, supra.

[8] *Coker v. State*, 164 Ga. App. 493, 496 (5) (297 SE2d 68) (1982).

[9] Id.

[10] See id. (young girl traced to home of defendant).

[11] See id. at 496-497.

[12] Compare id. at 496 (child in imminent danger).

[13] See *Thompson v. State*, 248 Ga. 343 (1) (285 SE2d 685) (1981).

[14] See *Owens v. State*, 236 Ga. App. 534, 535 (512 SE2d 394) (1999).

Fourth Amendment justification."[15] "A police officer may only seize what is in plain sight if he is in a place where he is constitutionally entitled to be."[16] Since Haney had no right to enter the home, he had no right to seize the contraband.[17]

The state concedes that it "is not alleging that the officers needed to enter the residence for [the] officer's safety." Instead, the state argues that the officers "simply followed the Appellant as he took their arrest warrant. They only entered as far as necessary to maintain control of the warrant and at no point began a search of the residence." No evidence, however, even remotely suggests that Leon-Velazquez was doing anything with the arrest warrant other than standing in the doorway of his own home trying to read it. Under these facts, the state's "maintain control of the warrant" justification for the warrantless intrusion into the home, even if true, simply does not rise to the level of an emergency or establish the existence of exigent circumstances.[18]

Citing *Latimer v. State*,[19] the state argues that "[i]t is not unlawful for officers to cross the threshold of a suspect's residence if the officer is acting in the lawful discharge of his duties and he does not begin an exploratory search of the premises." *Latimer* is readily distinguishable from this case. In *Latimer*, it was "uncontroverted that appellant voluntarily allowed the deputies to enter his apartment, making their intrusion into his apartment valid."[20] Here, it is undisputed that the appellant did *not* voluntarily allow the deputies to enter. Also, in *Latimer*, although the officer who observed the contraband "may have been standing slightly over the threshold in the entry foyer," this court found that "if any slight entry took place, it was reasonable under the totality of the circumstances, given the officers' presence to protect and secure the apartment."[21] When Haney entered the apartment here, he did so without legal authority and saw contraband from a place where he had no lawful right to be.[22] Therefore, the trial court erred in refusing to suppress the evidence

---

[15] (Emphasis in original.) *State v. Schwartz*, 261 Ga. App. 742, 745 (2) (583 SE2d 573) (2003) (quoting *State v. David*, 269 Ga. 533, 535 (2) (501 SE2d 494) (1998)).

[16] (Footnote omitted.) *Owens*, supra.

[17] See *Pickens v. State*, 225 Ga. App. 792, 794 (1) (b) (484 SE2d 731) (1997) (officer must be in lawful position to observe substance; discovery of evidence must be inadvertent; and it must be apparent that item seized is contraband).

[18] Compare *Owens*, supra, 236 Ga. App. at 536 (officer's initial limited entry into motel room based on his concern about his personal safety).

[19] 204 Ga. App. 639 (420 SE2d 91) (1992).

[20] Id. at 641 (1).

[21] Id. at 642 (2).

[22] See *King v. State*, 217 Ga. App. 889, 891 (459 SE2d 605) (1995).

obtained as a result of the illegal search and seizure.[23]

2. Leon-Velazquez's remaining claim of error is moot.

*Judgment reversed. Smith, C. J., and Johnson, P. J., concur.*

DECIDED SEPTEMBER 28, 2004.

*Whitmer & Law, George H. Law III,* for appellant.

*Jason J. Deal, District Attorney, Alison W. Toller, Assistant District Attorney,* for appellee.

---

[23] See id. at 892; *Otwell,* supra, 201 Ga. App. at 73.